**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| OPERATING ENGINEERS CONSTRUCTION INDUSTRY AND MISCELLANEOUS PENSION FUND, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> NEOGEN CORPORATION, JOHN ADENT, and DAVID NAEMURA, <br><br> Defendants. | Case No.: 1:25-cv-00802-HYJ <br><br> **CLASS ACTION** <br><br> **ORAL ARGUMENT REQUESTED** |

**BRIEF IN FURTHER SUPPORT OF THE PENSION FUNDS' MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTION**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT......................................................................................1

II.     ARGUMENT .............................................................................................................2

        A.      The Pension Funds Should Be Appointed Lead Plaintiff .....................................2

                1.      The Pension Funds Have the Largest Financial Interest ...........................3

                2.      As Sophisticated Institutional Investors With Neogen Shares
                        Purchased and Retained Until the End of the Class Period, the
                        Pension Funds Clearly Satisfy Rule 23 ......................................................7

        B.      IAM Cannot Rebut the Presumption That the Pension Funds Should Be
                Appointed Lead Plaintiff..................................................................................10

III.    CONCLUSION ...........................................................................................................14

i

## TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
No. 20-cv-200, 2020 WL 815136 (E.D. Pa. Feb. 19, 2020)..............................................*passim*

*Aronson v. McKesson HBOC, Inc.*,
79 F. Supp. 2d 1146 (N.D. Cal. 1999).................................................................................6

*Bensley v. FalconStor Software, Inc.*,
277 F.R.D. 231 (E.D.N.Y. 2011) .........................................................................................8

*Blitz v. AgFeed Indus., Inc.*,
No. 11-cv-992, 2012 WL 1192814 (M.D. Tenn. Apr. 10, 2012) ..........................................4

*Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*,
No. 16-cv-1106, 2017 WL 5759361 (N.D. Ohio Nov. 28, 2017)............................. 4, 7, 10, 12

*Brownback v. AppLovin Corp.*,
No. 25-cv-2772, 2025 WL 1810084 (N.D. Cal. June 30, 2025)................................................12

*Burgraff v. Green Bankshares, Inc.*,
No. 10-cv-253, 2011 WL 613281 (E.D. Tenn. Feb. 11, 2011)...................................................5

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*,
No. 17-cv-1677, 2017 WL 6028213 (N.D. Ohio Dec. 5, 2017)...........................................5, 6

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
No. 11-cv-8332, 2012 WL 1339678 (N.D. Ill. Apr. 18, 2012)........................................ 10, 11

*Doshi v. Gen. Cable*,
No. 17-cv-25, 2017 WL 5178673 (E.D. Ky. Nov. 7, 2017)......................................................9

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ...............................................................................................................9

*Eshe Fund v. Fifth Third Bancorp*,
No. 08-cv-421, 2008 WL 11322108 (S.D. Ohio Dec. 16, 2008).............................................12

*Franchi v. SmileDirectClub, Inc.*,
No. 19-cv-962, 2020 WL 6479561 (M.D. Tenn. Jan. 27, 2020) ..............................................4

*Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
No. 20-cv-576, 2020 WL 2475656 (S.D. Tex. May 13, 2020)................................................11

*In re Cardinal Health, Inc. Sec. Litig.*,
   226 F.R.D. 298 (S.D. Ohio 2005) ...................................................................................7, 10

*Ind. State Dist. Council v. Omnicare Inc.*,
   527 F. Supp. 2d 698 (E.D. Ky. 2007) ..................................................................................9

*Korver v. Sage Therapeutics, Inc.*,
   No. 24-cv-6511, 2024 WL 4930284 (S.D.N.Y. Dec. 2, 2024) .............................................11

*La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*,
   No. 19-cv-3347, 2020 WL 3396660 (S.D. Ohio June 19, 2020) ...........................................13

*Larmay v. AMMO Inc.*,
   No. 24-cv-2619, 2025 WL 2399292 (D. Ariz. Aug. 19, 2025) ..............................................6

*Lax v. First Merchs. Acceptance Corp.*,
   No. 97-cv-2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ...............................................4

*Lim v. Hightower*,
   No. 23-cv-1454, 2023 WL 7979869 (N.D. Ohio Nov. 16, 2023) ..........................................4

*Michiana Area Elec. Workers' Pension Fund v. Inari Med., Inc.*,
   No. 24-cv-3686, 2025 WL 936572 (S.D.N.Y. Mar. 27, 2025) ........................................11, 12

*Owens v. FirstEnergy Corp.*,
   No. 20-cv-3785, 20-cv-04287, 2020 WL 6873421 (S.D. Ohio Nov. 23, 2020) ......................4

*Pio v. Gen. Motors Co.*,
   No. 14-cv-11191, 2014 WL 5421230 (E.D. Mich. Oct. 24, 2014) ........................................5

*Richman v. Goldman Sachs Grp., Inc.*,
   274 F.R.D. 473 (S.D.N.Y. 2011) .........................................................................................6

*Ruckel v. Ford Motor Co.*,
   No. 17-cv-13536, 2018 WL 783534 (E.D. Mich. Feb. 7, 2018) ...........................................3

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
   No. 22-cv-6339, 2023 WL 3750115 (S.D.N.Y. June 1, 2023) .............................................11

*Shupe v. Rocket Cos.*,
   601 F. Supp. 3d 214 (E.D. Mich. 2022) ...........................................................................3, 10

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
   2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) .....................................................................4, 10

iii

*Xu v. FibroGen, Inc.*,
   No. 21-cv-2623, 2021 WL 3861454 (N.D. Cal. Aug. 30, 2021) ................................ 11, 12, 13

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ............................................................................................. 3, 7, 10

The Pension Funds respectfully submit this brief in further support of their motion for appointment as Lead Plaintiff (ECF No. 12), and in opposition to the competing motion filed by IAM National Pension Fund ("IAM").[1]  *See* ECF No. 14.

## I.      PRELIMINARY STATEMENT

The Pension Funds have the largest financial interest in the litigation, are the presumptive "most adequate plaintiff," and should be appointed as the Lead Plaintiff.  The Pension Funds incurred a ***total loss of $3.687 million LIFO*** on their Class Period transactions in Neogen common stock—more than double the $1.717 million LIFO loss incurred by IAM.



Groups of sophisticated institutional investors such as the Pension Funds—and aggregation of their respective losses—are expressly permitted by the plain language of the PSLRA, which provides for the appointment as lead plaintiff of "a person or ***group of persons***" that has the largest

---

[1] Unless otherwise noted, capitalized, defined terms have the meanings ascribed in the Pension Funds' motion (ECF No. 12), emphasis is added, and internal quotations and citations are omitted.

1

financial interest in the relief sought.  The Pension Funds' adequacy is evidenced by the submission

of their Joint Declaration (ECF No. 12-4), which memorializes their commitment to work together

in the best interests of the Class, their cohesiveness, their prior experience serving as lead plaintiff,

and their plans for cooperation and advocacy.  The Pension Funds—a group of five sophisticated

institutional investors that oversee nearly $8.5 billion in assets and have successful track records

in securities litigation—constitute a permissible group under the PSLRA.

IAM's financial interest in the litigation is less than half that of the Pension Funds.  Further,

the Pension Funds purchased shares of Neogen common stock throughout the entire Class Period,

whereas IAM's purchases were concentrated towards the end of the Class Period.  Finally, IAM

lacks standing to assert Exchange Act claims on behalf of the entire Class because IAM sold all

155,688 shares of its Neogen common stock by April 10, 2025—the day after the second partial

disclosure of fraud and nearly two months before the final disclosure on June 4, 2025.  By contrast,

the Pension Funds held shares through all three alleged disclosures of fraud on January 10, 2025,

April 9, 2025, and June 4, 2025.  Thus, unlike the Pension Funds, IAM lacks standing to represent

the interests of Class members that purchased shares of Neogen common stock from April 11,

2025 (the day after IAM sold out completely) through the last day of the Class Period on June 3,

2025 and *held such shares through the final disclosure of fraud* on June 4, 2025.

IAM cannot rebut the presumption that the Pension Funds are the most adequate plaintiff

to lead this litigation.  Accordingly, the Pension Funds respectfully request that the Court appoint

them as Lead Plaintiff, approve their selection of Lead Counsel, and deny IAM's motion.

## II.    ARGUMENT

### A.    The Pension Funds Should Be Appointed Lead Plaintiff

Appointment of the Pension Funds as Lead Plaintiff comports with the PSLRA's express

directive that courts "shall appoint as lead plaintiff the member or *members* of the purported

plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  In determining which movant is the most adequate plaintiff, the PSLRA instructs that "the court shall adopt a presumption that the most adequate plaintiff . . . is the [movant] that . . . has the largest financial interest in the relief sought by the class" and satisfies Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Importantly, at the lead plaintiff stage, movants need only make a "preliminary showing that the lead plaintiff's claims are typical and adequate [of the class]."  *Ruckel v. Ford Motor Co.*, No. 17-cv-13536, 2018 WL 783534, at *2 (E.D. Mich. Feb. 7, 2018) (alteration in the original). If the movant with the largest financial interest also makes a prima facie showing that it satisfies Rule 23, that movant is the presumptive lead plaintiff.  *See id*.  The statutory presumption in favor of the plaintiff with the largest financial interest may be rebutted "only upon proof"—not speculation—"that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

### 1. The Pension Funds Have the Largest Financial Interest

The Pension Funds have the largest financial interest in the relief sought by the Class by a substantial margin.  Courts in this District consider the "*Lax* factors" when identifying which movant has the largest financial interest, including: (1) total shares purchased during the class period; (2) net shares purchased during the class period; (3) net funds expended during the class period; and (4) approximate losses suffered.  *Shupe v. Rocket Cos.*, 601 F. Supp. 3d 214, 218 (E.D. Mich. 2022) (citing *Lax v. First Merchs. Acceptance Corp.*, No. 97-cv-2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)).  Courts generally place the greatest emphasis on approximate losses. *See*, *e.g.*, *Franchi v. SmileDirectClub, Inc.*, No. 19-cv-962, 2020 WL 6479561, at *4 (M.D. Tenn. Jan. 27, 2020); *Blitz v. AgFeed Indus., Inc.*, No. 11-cv-992, 2012 WL 1192814, at *7 (M.D. Tenn.

Apr. 10, 2012) ("the most important factor is the approximate losses").  Courts prefer the last-in, first-out (LIFO) methodology for calculating approximate losses.  *See, e.g.*, *Lim v. Hightower*, No. 23-cv-1454, 2023 WL 7979869, at *2 (N.D. Ohio Nov. 16, 2023) (explaining that courts prefer LIFO "because it reveals whether parties experienced net gains"); *Owens v. FirstEnergy Corp.*, No. 20-cv-3785, 20-cv-4287, 2020 WL 6873421, at *5 (S.D. Ohio Nov. 23, 2020) ("the LIFO method more accurately depicts the financial interests of lead plaintiff candidates").

The Pension Funds incurred nearly ***$2 million more in losses*** than IAM:

| MOVANT | LIFO LOSS |
|---|---|
| **The Pension Funds** | **$3,687,462** |
| IAM | $1,717,841 |

*Compare* Pension Funds Loss Chart, ECF No. 12-3 *with* IAM Loss Chart, ECF No. 17-3.

Courts routinely aggregate the individual losses of institutional investor group members like the Pension Funds.  *See*, *e.g.*, *Boynton Beach Firefighters' Pension Fund v. HCP, Inc.*, No. 16-cv-1106, 2017 WL 5759361, at *8, 12 (N.D. Ohio Nov. 28, 2017) (appointing a group of institutional investors with the largest aggregated loss); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, 2014 WL 1395059, at *7, *12 (E.D. Pa. Apr. 10, 2014) (appointing aggregated group of four institutional investors over institutional movant claiming the largest individual loss); *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, No. 20-cv-200, 2020 WL 815136, at *5, *8 (E.D. Pa. Feb. 19, 2020) (appointing aggregated group of five pension funds, ***including IAM***, over institutional movant with the largest individual loss).

Courts that decline to put the greatest weight on losses find that the other three *Lax* factors provide an "objective measurement of a movant's stake in the litigation." *Pio v. Gen. Motors Co.*, No. 14-cv-11191, 2014 WL 5421230, at *4 (E.D. Mich. Oct. 24, 2014); *see also City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.,* No 17-cv-1677, 2017 WL 6028213, at *2

(N.D. Ohio Dec. 5, 2017) (giving "[a]ll four factors . . . equal weight"). Some courts have found that net shares purchased is the "most determinative factor in approximating an investor's potential recovery" because it measures the number of shares retained through the corrective disclosures and held at the end of the class period. *Gen. Motors*, 2014 WL 5421230, at *4 (collecting cases).

As set forth in the chart below, the Pension Funds have a substantially larger financial interest than IAM under all four *Lax* factors. *Gen. Motors Co.*, 2014 WL 5421230, at *8 (holding that all four factors favored pension fund movant); *Burgraff v. Green Bankshares, Inc.*, No. 10-cv-253, 2011 WL 613281, at *2 (E.D. Tenn. Feb. 11, 2011) (finding the movant who had a greater interest under all four *Lax* factors had "the largest financial interest").

| MOVANT | TOTAL SHARES PURCHASED | NET SHARES PURCHASED | NET FUNDS EXPENDED | LIFO LOSS |
|---|---|---|---|---|
| **Pension Funds** | **305,350** | **143,345** | **$4,434,594** | **$3,687,462** |
| Miami FIPO | 101,015 | 0 | $1,192,932 | $1,192,932 |
| Nashville | 79,880 | 79,880 | $1,400,908 | $985,847 |
| Orlando[2] | 67,465 | 67,465 | $1,185,562 | $835,009 |
| Local 66 | 35,990 | 0 | $452,706 | $452,706 |
| West Palm Beach Firefighters | 21,000 | (4,000) | $202,483 | $220,966 |
| **IAM** | **155,688** | **0** | **$1,717,841** | **$1,717,841** |

*Compare* Pension Funds Loss Chart, ECF No. 12-3 *with* IAM Loss Chart, ECF No. 17-3.

---

[2] Orlando consists of Orlando Police, Orlando Firefighters, and Orlando General, three related, defined-benefit pension funds based in Orlando, Florida that pool all public equity investments in a unified strategy. Orlando purchased Neogen stock in a jointly held account and incurred a substantial loss on its Neogen investments. *See* ECF No. 12-4, ¶¶ 4-6. Courts consistently find that such related funds are one fund for purposes of PSLRA aggregation. *See, e.g.*, *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1157 n.11 (N.D. Cal. 1999) (holding that group of closely related funds were "essentially one person for purposes of the [PSLRA].").

With respect to net shares purchased, the Complaint identifies three corrective disclosures on January 10, 2025, April 9, 2025, and June 4, 2025.  *See* ECF No. 1, ¶¶ 4-6, 39-42.  IAM has acknowledged the significance of the June 4, 2025 corrective disclosure.[3]  Unlike the Pension Funds, IAM sold all of its Neogen shares by April 10, 2025 and did not hold ***any*** shares through the June 4, 2025 corrective disclosure.[4]  The Pension Funds retained Neogen shares through all three corrective disclosures, holding 143,345 shares at the end of the Class Period.[5]  In other words, IAM's financial stake in the litigation based on net shares purchased and held at the end of the Class Period is ***zero***.  *See*, *e.g.*, *TransDigm*, 2017 WL 6028213, at *2 (appointing pension fund over competing pension trust in part because pension fund "purchased 1,007 shares on a net basis compared to ***zero net shares purchased*** by Pension Trust" that "sold out its position . . . during the class period"); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 311 (S.D. Ohio 2005) (rejecting movant that retained less than .02% of its purchases in part because "[a] small amount of net shares is typically not favored when choosing a plaintiff under the four factor method.").

---

[3] IAM argues that "the price of Neogen common stock suffered further declines" on June 4, 2025 in response to the news that Neogen "expected 'EBITDA margin to probably be around the high-teens[,]' which represented a considerable from the previous quarter's profit margin of 22%, blaming the expected shortfall on 'elevated inventory write-offs.'"  ECF No. 15 at 3.

[4] *Compare* Pension Funds Loss Chart, ECF No. 12-3 *with* IAM Loss Chart, ECF No. 17-3.

[5] While West Palm Beach Firefighters sold 4,000 more shares than it purchased during the Class Period, rendering it a "net seller," it held shares it purchased during the Class Period through two disclosures of fraud and expended more funds on its purchases than it received from selling shares, rendering it a "net loser."  Courts consistently appoint as lead plaintiff net sellers who are also net losers, finding that their status as net sellers does not undermine their financial interest or adequacy to serve as lead plaintiff as they did not benefit from the fraud.  *See, e.g., Larmay v. AMMO Inc.*, No. 24-cv-2619, 2025 WL 2399292, at *5 (D. Ariz. Aug. 19, 2025) (finding that a net seller who is also a net loser "should have no trouble proving damages and, therefore, is qualified to serve as lead plaintiff"); *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) (finding net seller, net loser group member qualified for appointment where "there is no good reason not to recognize losses which a net seller has incurred" and movant was "well positioned to argue that the challenged conduct caused it legal harm").

Under any relevant calculation, the Pension Funds have the "largest financial interest in the relief sought by the class" and are entitled to Lead Plaintiff appointment.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 2.    As Sophisticated Institutional Investors With Neogen Shares Purchased and Retained Until the End of the Class Period, the Pension Funds Clearly Satisfy Rule 23

As sophisticated and experienced institutional investors, each with a sizeable financial stake in the litigation, the Pension Funds are exactly the type of plaintiffs Congress sought to encourage to lead securities class action.  *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

The Pension Funds' adequacy is demonstrated by their experience prosecuting securities class actions, having successfully served as responsible class fiduciaries, including in groups with other institutional investors.[6]  *See* Joint Declaration, ECF No. 12-4, ¶ 10 (citing securities class actions in which Miami FIPO, Local 66, and West Palm Beach Firefighters successfully served as lead plaintiff and secured over $84.5 million dollars in total settlement dollars, as well as four of the five Pension Funds' service as lead plaintiff in pending securities class actions); *see also HCP, Inc.*, 2017 WL 5759361, at *12 (highlighting that institutional investor group members "have both served or are serving as lead plaintiffs in other securities class actions").  In approving the *Quality Systems, Inc.* settlement, for example, Judge Carney noted that Miami FIPO "devoted substantial

---

[6] After analyzing the merits of the claims filed first by Local 66 with G&E as its counsel, the results of their respective counsel's investigations, and their respective losses, Miami FIPO, Nashville, Orlando, Local 66, and West Palm Beach Firefighters decided it would be in their and the Class's best interests to seek joint Lead Plaintiff appointment.  *See* ECF No. 12-4, ¶¶ 13-15.

time and effort to monitoring the litigation and assisting Lead Counsel[,]" including by reviewing and commenting on case filings, offering input on litigation strategy during discovery and the parties' mediation, and identifying and providing relevant information throughout the litigation. *See* Order Granting Plaintiffs' Motions for Final Approval of Settlement, *In re Quality Systems, Inc. Sec. Litig.*, No. 13-cv-1818 (C.D. Cal. Nov. 19, 2018), ECF No. 117 (Exhibit A hereto).

Unlike IAM (*see infra* Section II.B.1), the Pension Funds' investments throughout the Class Period are typical of the investments of the ***entire Class*** of Neogen common stock purchasers.  As noted above, the Pension Funds' losses were incurred on shares purchased and retained over ***all three*** of the alleged corrective disclosures, and the Pension Funds held 143,345 shares at the end of the Class Period.[7]  *See Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 240 (E.D.N.Y. 2011) (appointing movant who held shares through the final corrective disclosure at the end of the class period, because "the Court is concerned that if [opposing movant who sold out completely after a partial disclosure] is unable to prove loss causation and is found to lack standing, the entire case could be dismissed.").  By contrast, IAM held Neogen shares only for a short period of time towards the end of the Class Period and ***completely sold out*** on April 10, 2025, before the end of the Class Period and the final corrective disclosure on June 4, 2025.[8]

---

[7] *See* Pension Funds Certifications and Loss Chart, ECF Nos. 12-2, 12-3 (reflecting 305,350 total shares purchased and 143,345 net shares purchased during the Class Period).

[8] *See* IAM Certification and Loss Chart, ECF Nos. 17-2, 17-3 (reflecting three sales of cumulative Class Period holdings of 155,688 Neogen shares on April 9 and 10, 2025).



Accordingly, the Pension Funds are the ***only*** movant that has standing to pursue Exchange Act claims for Neogen common stock purchasers that held their shares through the final corrective disclosure. *See Ind. State Dist. Council v. Omnicare Inc.*, 527 F. Supp. 2d 698, 708-09 (E.D. Ky. 2007) (holding that lead plaintiff that sold all of its stock before an alleged disclosure lacked standing), *aff'd in part, rev'd in part on other grounds*, 583 F.3d 935, 948 (6th Cir. 2009). The Pension Funds' losses bear a strong causal connection to the fraud, underscoring the Pension Funds' superior financial interest. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005); *see Doshi v. Gen. Cable*, No. 17-cv-25, 2017 WL 5178673, at *2-4 (E.D. Ky. Nov. 7, 2017) (finding lead plaintiff movant who sold all of its shares before the final corrective disclosure "can show no loss causation" and "would be subject to a standing defense" on that disclosure).

The Pension Funds have made a preliminary showing that they satisfy Rule 23 and are ideally suited to serve as Lead Plaintiff, and are therefore the presumptive most adequate plaintiff. *See Energy Transfer*, 2020 WL 815136, at *6 (noting that "[f]or the purposes of examining a

9

motion for the appointment of lead plaintiff, the Rule 23 analysis should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy").

**B.      IAM Cannot Rebut the Presumption That the Pension Funds Should Be Appointed Lead Plaintiff**

Because the Pension Funds have established their superior financial interest and Rule 23 adequacy and typicality, the Pension Funds must be appointed, unless there is proof to rebut the presumption favoring their appointment.  For the reasons that follow, IAM cannot do so.

The presumption may be rebutted only upon proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Rocket Cos.*, 601 F. Supp. 3d at 221 (appointing presumptive lead plaintiff where "[the c]ourt has not been presented with evidence or arguments suggesting that [movant] will not fairly protect the interests of the class . . . or is subject to unique defenses").

No such proof exists.  *First*, the fact that the Pension Funds are a group in no way precludes their appointment.  Courts have routinely held that funds such as the institutions present here may aggregate their losses for purposes of determining the largest financial interest.  *See, e.g.*, *Energy Transfer*, 2020 WL 815136, at *5, *8 (appointing group of five institutional investors); *DFC Glob.*, 2014 WL 1395059, at *3-11 (appointing group of four institutional investors); *Cardinal Health*, 226 F.R.D. at 310, 312 (S.D. Ohio 2005) (same); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, No. 11-cv-8332, 2012 WL 1339678, at *7-8 (N.D. Ill. Apr. 18, 2012) (same).

*Second*, aggregation is permitted even in the absence of any pre-existing relationship among the members.  *See HCP, Inc.*, 2017 WL 5759361, at *7 ("[T]he PSLRA does not contain within it a requirement that groups serving as co-lead plaintiffs have had a pre-existing relationship."); *Hospira*, 2012 WL 1339678, at *7 (appointing "Institutional Investors Group [that]

10

does not share any relationship that pre-dates this litigation"); *In re Paysafe Ltd.*, No. 21-cv-10611, 2022 WL 1471122, at *5 (S.D.N.Y. May 10, 2022) (finding "the majority of courts . . . have permitted unrelated investors to join together as a group."); *Energy Transfer*, 2020 WL 815136, at *4 (noting that the "key question" is adequacy, not relatedness).[9]

Indeed, IAM's own proposed lead counsel has repeatedly sought and obtained appointment of similar groups of institutions—irrespective of whether such groups had the largest individual loss. *See*, *e.g.*, *Michiana Area Elec. Workers' Pension Fund v. Inari Med., Inc.*, No. 24-cv-3686, 2025 WL 936572, *6-7 (S.D.N.Y. Mar. 27, 2025) (appointing three pension fund group that did not claim largest individual loss); *San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, No. 22-cv-6339, 2023 WL 3750115, at *7-8 (S.D.N.Y. June 1, 2023) (appointing three pension fund group that did not claim largest individual loss); *Korver v. Sage Therapeutics, Inc.*, No. 24-cv-6511, 2024 WL 4930284, at *3 (S.D.N.Y. Dec. 2, 2024) (appointing two pension fund group that did not claim largest individual loss); *Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*, No. 20-cv-576, 2020 WL 2475656, at *4 (S.D. Tex. May 13, 2020) (appointing

---

[9] Even if it were a requirement, and it is not, most of the Pension Funds have a pre-existing relationship. Specifically, Miami FIPO, Orlando, and West Palm Beach Firefighters share the same fiduciary counsel and are all members in the National Conference for Public Employee Retirement Systems ("NCPERS"). *See* ECF No. 12-4, ¶ 13. Courts often find that pre-existing relationships, among even some members of an institutional investor group, support aggregation and a finding of cohesiveness and adequacy. *See*, *e.g.*, *Xu v. FibroGen, Inc.*, No. 21-cv-2623, 2021 WL 3861454, at *9 (N.D. Cal. Aug. 30, 2021) (explaining that pre-existing relationships among some pension fund group members, including membership in NCPERS and the Mid-Atlantic Plan Sponsors, supports "prima facie showing of adequacy"); *Hospira*, 2012 WL 1339678, at *7 (detailing how pre-existing relationships among pension fund group members that "share certain resources"—including general counsel "from the same law firm which advises the funds in normal course of their business"—supports finding of cohesiveness and adequacy).

11

three pension fund group that did not claim largest individual loss); *Firemen's Ret. Sys. of St. Louis v. Telos Corp.*, No. 22-cv-135, ECF No. 30 (E.D. Va. May 4, 2022) (same).[10]

*Third*, the fact that IAM claims a larger loss than any individual member of the Pension Funds does not entitle it to appointment here.  Courts evaluate financial interests of groups of institutional investors on an aggregated basis even when they lack the largest individual loss.  *See, e.g.*, *Inari*, 2025 WL 936572, *6 (finding group of pension funds with largest aggregated loss had the largest financial interest); *HCP, Inc.*, 2017 WL 5759361, at *8 (finding aggregation of unrelated institutional movant group, represented by IAM's counsel, "appropriate"); *FibroGen*, 2021 WL 3861454, at *6 (finding pension fund group with largest aggregated loss had "the largest financial interest" over movant claiming the largest individual loss).

*Fourth*, any argument that the Pension Funds lack sufficient cohesion is undermined by the Pension Funds' efforts to share their perspectives, experiences, and resources to direct this litigation to date, memorialized in their Joint Declaration.  *See Eshe Fund v. Fifth Third Bancorp*, No. 08-cv-421, 2008 WL 11322108, *4 (S.D. Ohio Dec. 16, 2008) (examining "the quality of representation the group will provide to the class" and finding movant group's joint declaration "presented sufficient information to show that they are willing to work together in the interests of the proposed class").  Specifically, the Joint Declaration shows that the Pension Funds will work cohesively together as Lead Plaintiff in the prosecution of this Action:

---

[10] In 2025 alone, IAM's proposed lead counsel has been appointed four times as lead counsel on behalf of lead plaintiff groups of two or more distinct institutions.  *See In re Arconic Corp. Sec. Litig.*, No. 25-cv-863, ECF No. 25 (S.D.N.Y. June 25, 2025) (appointing three pension fund group); *In re Novo Nordisk A/S Sec. Litig.*, No. 25-cv-0713, ECF No. 28 (D.N.J. April 9, 2025) (appointing three pension fund group); *Inari*, 2025 WL 936572, *6-7 (appointing three pension fund group); *Brownback v. AppLovin Corp.*, No. 25-cv-2772, 2025 WL 1810084 (N.D. Cal. June 30, 2025) (appointing two pension fund group).

- The Pension Funds' sophistication and the commitment of their principals under oath to engage with one another in a collaborative way to oversee the prosecution of the Action.  *See* ECF No. 12-4, ¶¶ 2-9, 18.

- The Pension Funds' experience as fiduciaries overseeing billions of dollars in retirement assets and in vetting, hiring, and managing counsel in complex litigation, with "staff capable of overseeing this matter" to ensure that the Pension Funds make timely decisions.  *See id.*, ¶¶ 2-10, 17.

- The Pension Funds' implementation of a clear and logical decision-making structure with established procedures, and communication with one another and the exchange of contact details to facilitate future communication, both with and without counsel.  *See id.*, ¶¶ 16-19.

- The Pension Funds' established relationships with their counsel and joint determination to seek a leadership role in this Action and to work collaboratively as a small group of philosophically aligned and experienced fiduciaries.  *See id.*, ¶¶ 9-13.

The affirmations in the Joint Declaration meet or exceed those found acceptable by courts throughout the country in appointing similar institutional investor groups.  *See, e.g.*, *La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*, No. 19-cv-3347, 2020 WL 3396660, at *4 (S.D. Ohio June 19, 2020) (crediting joint declaration that "demonstrated . . . that [pension fund movant group] are willing to cooperate for the advancement of the Class' interest"); *FibroGen*, 2021 WL 3861454, at *10 (finding pension fund group's joint declaration demonstrating their "sophistication, litigation experience, fiduciary responsibilities to their beneficiaries, and rigorous vetting process for counsel strongly impl[ied] that they are capable of overseeing the litigation and their proposed lead counsel in an independent manner"); *Energy Transfer*, 2020 WL 815136, at *5 (crediting pension fund group's joint declaration discussing how the group came together, its decision to move jointly for lead plaintiff, its established oversight and communication procedures, its awareness of a lead plaintiff's duties under the PSLRA, and its "commitment to prosecuting this litigation vigorously and efficiently").

The Pension Funds have more than established their prima facie adequacy and typicality—both quantitatively and qualitatively—and there is no evidence, much less proof, to the contrary.

## III. CONCLUSION

For the foregoing reasons, the Pension Funds respectfully request that the Court: (1) appoint the Pension Funds to serve as Lead Plaintiff for the Class; and (2) approve the Pension Funds' selection of Saxena White and G&E to serve as Lead Counsel for the Class.

Dated: September 30, 2025

Respectfully submitted,

By: /s/ E. Powell Miller
E. Powell Miller (P39487)
Marc L. Newman (P51393)
Dennis A. Lienhardt (P81118)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com
mln@millerlawpc.com
dal@millerlawpc.com

*Local Counsel for Proposed Lead Plaintiff the Pension Funds*

**SAXENA WHITE P.A.**
Marco A. Dueñas (admission forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551
Fax: (888) 216-2220
mduenas@saxenawhite.com

Maya Saxena (admission forthcoming)
Lester R. Hooker (admission forthcoming)
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Tel.: (561) 394-3399
Fax: (561) 394-3382
msaxena@saxenawhite.com
lhooker@saxenawhite.com

**GRANT & EISENHOFER P.A.**
Karin E. Fisch
Vincent J. Pontrello
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
kfisch@gelaw.com
vpontrello@gelaw.com

*Counsel for Proposed Lead Plaintiff the Pension
Funds, and Proposed Lead Counsel for the Class*

**KLAUSNER KAUFMAN JENSEN
& LEVINSON**
Robert D. Klausner (admission forthcoming)
7080 NW 4th Street
Plantation, Florida 33317
Tel.: (954) 916-1202
Fax: (954) 916-1232
bob@robertdklausner.com

*Additional Counsel for Proposed Lead Plaintiff
Miami FIPO, Orlando, and West Palm Beach
Firefighters*

15

**CERTIFICATE OF COMPLIANCE**

The undersigned, local counsel for the Pension Funds, certifies that this memorandum of law contains 4,239 words and complies with the word-count limitation of Local Civil Rule 7.3(b)(i).    The word-count was generated using Microsoft® Word for Microsoft 365 MSO (Version 2508 Build 16.0.19127.20192) 64-bit.

/s/ E. Powell Miller
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 West University Drive
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 30, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

*/s/ E. Powell Miller*
E. Powell Miller
