UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

LANSING DIVISION

| | |
|---|---|
| OPERATING ENGINEERS CONSTRUCTION INDUSTRY AND MISCELLANEOUS PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br> vs.<br><br>NEOGEN CORPORATION, et al.,<br><br>      Defendants. | Civ. No. 1:25-cv-00802-HYJ-RSK<br><br>CLASS ACTION<br><br>**CORRECTED**<br><br>IAM NATIONAL PENSION FUND'S RESPONSE BRIEF IN FURTHER SUPPORT OF ITS LEAD PLAINTIFF MOTION AND IN OPPOSITION TO THE MIAMI-NASHVILLE-PALM BEACH-PITTSBURGH-ORLANDO GROUP'S MOTION |

4912-3233-9308.v2

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ....................................................................................................1

II.     ARGUMENT........................................................................................................2

        A.      IAM Is the Presumptive Lead Plaintiff...................................................3

        B.      The PSLRA Was Enacted to End the Lawyer-Driven Machinations the
                Miami-Nashville-Palm Beach-Pittsburgh-Orlando Group Embodies ....................5

                1.      The Group Has No Pre-Existing Relationship; Its "Ties" Are Post
                        Hoc........................................................................................................9

                2.      Despite Counsels' Attempt to Package Three Distinct Orlando
                        Pension Funds as a Single "Orlando" Fund, the Seven-Member
                        Group Squarely Exceeds *Baan's* 3-5 Member Benchmark ......................10

                3.      The Evidence Reveals a Lawyer-Driven "Marriage of
                        Convenience" ...................................................................................12

III.    CONCLUSION........................................................................................................15

4912-3233-9308.v2

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ansfield v. Omnicare, Inc.*,
2012 WL 12924531 (E.D. Ky. Mar. 12, 2012)............................................................................9

*Aronson v. McKesson HBOC, Inc.*,
79 F. Supp. 2d 1146 (N.D. Cal. 1999) ......................................................................................2

*Atkinson v. Morgan Asset Mgmt., Inc.*,
2008 WL 11319683 (W.D. Tenn. Sep. 23, 2008)......................................................................1

*Cambridge Ret. Sys. v. Mednax, Inc.*,
2018 WL 8804814 (S.D. Fla. Dec. 6, 2018) ..............................................................................8

*Dang v. Amarin Corp. PLC*,
2022 WL 15524944 (D.N.J. Oct. 27, 2022)..............................................................................4

██████████████████████████████████████████████████████████████

*Guzman v. Ford Motor Co.*,
2025 WL 2694126 (E.D. Mich. Sept. 22, 2025)........................................................................3

*In re Baan Co. Sec. Litig.*,
186 F.R.D. 214 (D.D.C. 1999)........................................................................................ *passim*

*In re Bally Total Fitness Sec. Litig.*,
2005 WL 627960 (N.D. Ill. Mar. 15, 2005)..............................................................................4

*In re Carreker Corp. Sec. Litig.*,
2003 WL 27396764 (N.D. Tex. Aug. 14, 2003)......................................................................10

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001)........................................................................................... *passim*

*In re Century Bus. Servs. Sec. Litig.*,
202 F.R.D. 532 (N.D. Ohio 2001) ............................................................................................8

*In re Cloudera, Inc. Sec. Litig.*,
2019 WL 6842021 (N.D. Cal. Dec. 16, 2019)..........................................................................9

*In re CMED Sec. Litig.*,
2012 WL 1118302 (S.D.N.Y. Apr. 2, 2012)............................................................................13

4912-3233-9308.v2

**Page**

*In re Enron Corp., Sec. Litig.*,
206 F.R.D 427 (S.D. Tex. 2002)...........................................................................................9

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) ...............................................................................3, 8, 13

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
2004 WL 3314943 (N.D. Ohio May 12, 2004)......................................................................8

*In re Origin Materials, Inc.*,
2023 WL 8698363 (E.D. Cal. Dec. 15, 2023) ......................................................................8

*In re Petrobras Sec. Litig.*,
104 F. Supp. 3d 618 (S.D.N.Y. 2015)............................................................................ *passim*

*In re Stitch Fix, Inc. Sec. Litig.*,
393 F. Supp. 3d 833 (N.D. Cal. 2019) ..................................................................................8

*In re Telxon Corp. Sec. Litig.*,
67 F. Supp. 2d 803 (N.D. Ohio 1999)........................................................................... *passim*

*Ind. Pub. Ret. Sys. v. Rivian Auto., Inc.*,
2024 WL 5279156 (C.D. Cal. Oct. 24, 2024),
*recons. denied by* 2025 WL 29449 (C.D. Cal. Jan. 2, 2025) .......................................................8

*Int'l Union of Operating Eng'rs Loc. No. 478 Pension Fund v. FXCM Inc.*,
2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015)........................................................................13

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)...................................................................................13

*Koffsmon v. Green Dot Corp.*,
2021 WL 3473975 (C.D. Cal. Aug. 6, 2021)....................................................................4, 6

*Makhlouf v. Tailored Brands, Inc.*,
2017 WL 1092311 (S.D. Tex. Mar. 23, 2017)..................................................................10, 13

*Markette v. XOMA Corp.*,
2016 WL 2902286 (N.D. Cal. May 13, 2016)....................................................................8, 14

*McDermid v. Inovio Pharms., Inc.*,
467 F. Supp. 3d 270 (E.D. Pa. 2020) ..................................................................................12

4912-3233-9308.v2

**Page**

*Owens v. FirstEnergy Corp.*,
2020 WL 6873421 (S.D. Ohio Nov. 23, 2020)..........................................................................3

*Ross v. Abercrombie & Fitch Co.*,
2006 WL 8469668 (S.D. Ohio June 15, 2006) .........................................................................3

*Ross v. Abercrombie & Fitch Co.*,
2007 WL 895073 (S.D. Ohio Mar. 22, 2007)...........................................................................4

*Tsirekidze v. Syntax-Brillian Corp.*,
2008 WL 942273 (D. Ariz. Apr. 7, 2008) ................................................................................8

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78u-4(a)(3)(B)(iii)(I).....................................................................................................2, 5, 6
§78u-4(a)(3)(B)(iii)(I)(bb) ....................................................................................................2
§78u-4(a)(3)(B)(iii)(II) ..........................................................................................................5

Federal Rules of Civil Procedure
Rule 23 ...............................................................................................................................2, 5

Florida Statutes
Fla. Stat. ch. 175 (2025)........................................................................................................11
Fla. Stat. ch. 185 (2025).........................................................................................................11

**LEGISLATIVE HISTORY**

S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679.............................................2, 6

4912-3233-9308.v2

## I.        INTRODUCTION

The pending lead plaintiff motions present the Court with a stark choice.  On one side is precisely the type of lead plaintiff Congress envisioned when it passed the Private Securities Litigation Reform Act of 1995 ("PSLRA"): a single, sophisticated institutional investor – the IAM National Pension Fund ("IAM") – that suffered the largest financial loss of any class member seeking to serve as lead plaintiff and is prepared to prosecute this case with one, highly-qualified law firm.  On the other side is one of the very problems the PSLRA was enacted to solve: a sprawling, lawyer-created group of seven pension funds, scattered across three states, represented by four different law firms (the "Miami-Nashville-Palm Beach-Pittsburgh-Orlando" group).[1]

The  Miami-Nashville-Palm  Beach-Pittsburgh-Orlando  group  is  an  "'artifice  cobbled together by cooperating counsel for the obvious purpose of creating a large enough grouping of investors to qualify as "lead plaintiff,"'" which can then select the equally artificial grouping of counsel as lead counsel.  *Atkinson v. Morgan Asset Mgmt., Inc.*, 2008 WL 11319683, at *10 (W.D. Tenn. Sep. 23, 2008).[2]  The members comprising this unwieldy and geographically dispersed amalgamation have only two things in common: (1) all have smaller individual losses than IAM; and (2) all were artificially aggregated by counsel, not each other, in a transparent bid to game this process.  The PSLRA was designed "to empower investors so that they – not their lawyers – exercise primary control over private securities litigation."  S. Rep. No. 104-98, at 4 (1995),

---

[1]    The group includes: (1) City of Miami Fire Fighters' and Police Officers' Retirement Trust ("Miami FIPO"); (2) Metropolitan Employee Benefit System; (3) City of Orlando Firefighters' Pension Fund; (4) City of Orlando Police Officers' Pension Fund; (5) City of Orlando General Employees' Pension Fund; (6) Operating Engineers Construction Industry and Miscellaneous Pension Fund ("Local 66"); and (7) West Palm Beach Firefighters' Pension Fund.

[2]    Unless otherwise noted, all emphasis is added and citations are omitted.

4912-3233-9308.v2

*reprinted in* 1995 U.S.C.C.A.N. 679, 683.   Appointing the Miami-Nashville-Palm Beach-Pittsburgh-Orlando group's lawyer-driven amalgam would be antithetical to one of the core purposes of the PSLRA.

The Court should reject this effort to circumvent the PSLRA, deny the Miami-Nashville-Palm Beach-Pittsburgh-Orlando group's motion, and appoint as lead plaintiff the movant with the largest individual financial interest – IAM.  That is, appoint a leadership structure consistent with "the model envisioned by the PSLRA – one strong plaintiff with one counsel who will speak on its behalf." *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 817 (N.D. Ohio 1999); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1152-53 (N.D. Cal. 1999) ("it makes sense that one client will provide more control than a disjointed group concocted by plaintiffs' counsel – even if the group consists of institutional investors").

## II.    ARGUMENT

"In appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status." *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001). "The process begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *Id.* (quoting 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb)).  "Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether that movant 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure,' and is thus the presumptively most adequate plaintiff." *Id.* (quoting 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)).  Here, IAM is the presumptively most adequate plaintiff.

4912-3233-9308.v2

### A.      IAM Is the Presumptive Lead Plaintiff

Although the PSLRA does not prescribe a specific method for identifying the "largest financial interest," "the dominant approach . . . in the Sixth Circuit at large . . . is to treat the loss factor as determinative."  *See Owens v. FirstEnergy Corp.*, 2020 WL 6873421, at *9 (S.D. Ohio Nov. 23, 2020) (Marbley, J.); *see also Guzman v. Ford Motor Co.*, 2025 WL 2694126, at *7 (E.D. Mich. Sept. 22, 2025) (Parker, J.) ("most courts agree that [loss] is the most salient factor in assessing the lead plaintiff").  Because IAM suffered the largest individual loss, it has the greatest financial interest in the relief sought by the class:



As is plainly evident, "when taken alone," none of the losses suffered by the ***seven*** disparate pension funds "come[] close to the losses asserted by [IAM] and thus lends further support to the presumption of [IAM] as lead plaintiff."  *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 118-19 (E.D.N.Y. 2012) (noting that court was "particularly skeptical of the proposed amalgamation, because this is not the situation where there is a pre-existing relationship or where the incurred losses of the separate institutional investors individually exceed the losses of any other"); *cf. Ross v. Abercrombie & Fitch Co.*, 2006 WL 8469668, at *2 (S.D. Ohio June 15, 2006) (finding that

- 3 -

4912-3233-9308.v2

aggregating group members' losses was permissible *only* because two group members possessed the largest losses *individually*, *i.e.*, "there was no need to put the group together solely in order to obtain a financial interest greater than [the competing movant's]"; nonetheless denying group's motion because of insufficient evidence of cohesion); *Ross v. Abercrombie & Fitch Co.*, 2007 WL 895073 (S.D. Ohio Mar. 22, 2007) (denying reconsideration).  The same concern appears here: "without aggregation . . . [the group] would have suffered less losses than [the individual movant] and would be removed from qualification as the presumptive lead plaintiff."  *Dang v. Amarin Corp. PLC*, 2022 WL 15524944, at \*7 (D.N.J. Oct. 27, 2022) (cleaned up); *see also Koffsmon v. Green Dot Corp.*, 2021 WL 3473975, at \*3 (C.D. Cal. Aug. 6, 2021) (warning that permitting such aggregation "would be to undermine the PSLRA's objective of preventing lawyer-driven litigation"); *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at \*4 (N.D. Ill. Mar. 15, 2005) ("Accordingly, we will consider the individual investors in the groups separately as lead plaintiff candidates, but we will not recognize the artificial aggregations of the [groups].").

The following table starkly illustrates the choice before the Court:

| Factor | IAM | The Miami-Nashville-Palm Beach-Pittsburgh-Orlando Group |
| --- | --- | --- |
| **Number of Class Members** | 1 | 7 (including the three distinct Orlando funds) |
| **Number of Law Firms** | 1 | 4 |
| **Largest Individual Loss** | ~$1.72 Million | ~$1.19 Million (Miami FIPO) |
| **Total Aggregated Loss** | ~$1.72 Million | ~$3.69 Million |
| **Structure** | Single, sophisticated institutional investor | Geographically dispersed, unaffiliated funds coordinated by four different law firms |

- 4 -

Because IAM has the largest individual financial interest, it is the presumptive "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

"Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether that movant 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure,' and is thus the presumptively most adequate plaintiff." *Cendant*, 264 F. 3d at 263.  Here, IAM has made that *prima facie* showing of typicality and adequacy.  *See* ECF 15 at PageID.250-252.  It is precisely the kind of plaintiff Congress sought to empower: a single, sophisticated institutional investor with approximately $14 billion in assets under management operated for the benefit of more than 90,000 participants and a proven record of serving as a fiduciary.  It has retained one highly qualified trial-ready law firm, Robbins Geller Rudman & Dowd LLP, to prosecute the case efficiently.

Once attached, the presumption can "be rebutted only upon proof" that the presumptive lead plaintiff "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *Cendant*, 264 F.3d at 268.  No competing movant can offer proof sufficient to rebut that presumption.  Accordingly, IAM's motion should be granted.

B.    **The PSLRA Was Enacted to End the Lawyer-Driven Machinations the Miami-Nashville-Palm Beach-Pittsburgh-Orlando Group Embodies**

In evaluating the competing motions, the Court should consider the core concern animating Congress' enactment of the PSLRA: that some class action securities litigation had become a "lawyer-driven" enterprise.  In adopting the lead plaintiff provisions, "Congress sought to 'protect[] investors who join class actions against lawyer-driven lawsuits by giving control of the litigation to lead plaintiffs with substantial holdings of the securities of the issuer.'"  *In re Baan*

- 5 -

4912-3233-9308.v2

*Co. Sec. Litig.*, 186 F.R.D. 214, 220 (D.D.C. 1999) (SEC's Amicus Brief); *see also* S. Rep. No. 104-98, at 4 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 683 (Congress intends "to empower investors so that they – not their lawyers – exercise primary control over private securities litigation"); *id.* at 10 ("The lead plaintiff should actively represent the class.  The Committee believes that the lead plaintiff – not lawyers – should drive the litigation.").

Courts have consistently enforced that mandate by rejecting counsel-assembled aggregations of unrelated investors.  *See, e.g.*, *Telxon*, 67 F. Supp. 2d at 813, 816 (rejecting a "mere assemblage of unrelated persons who share nothing in common **other than** the twin fortuities that (1) they suffered losses and (2) they entered into retainer agreements with the same attorney or attorneys" as "inconsistent with the definition of group intended by the PSLRA") (emphasis in original); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621-22 (S.D.N.Y. 2015) ("Allowing unrelated plaintiffs to band together in order to manufacture a larger financial interest does just the opposite.  It ensures that the lawyers, who are invariably the matchmakers behind such marriages of convenience, are the true drivers of the litigation.  Moreover, it creates problems of coordination, risks duplication of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent.").  "'To permit aggregation and lead plaintiff status for such a group undercuts the goal of having the plaintiffs and not the lawyers call the shots in securities class actions.'"  *Koffsmon,* 2021 WL 3473975, at \*2.

Thus, while the statute expressly permits a "group of persons" to serve as lead plaintiff (15 U.S.C. §78u-4(a)(3)(B)(iii)(I)), courts sensibly hold that "group" means more than a mere random assemblage of unrelated individuals or class members.  *Telxon*, 67 F. Supp. 2d at 811.  Indeed, it would be inconsistent with the PSLRA "to allow a melange of unrelated persons to serve as the lead plaintiff, especially if multiple law firms are to represent their interests" because "[s]uch a

- 6 -

'group' would be a 'lead plaintiff' in name only; in substance, those individuals would essentially constitute a collection of lead plaintiffs, unbound by any allegiance to one another and unlikely to function as a unified whole" and the "Court would be left with little assurance that the 'group' speaks with a collective voice." *Id.* at 813; *see also Baan*, 186 F.R.D. at 224 (recognizing that "[i]t ordinarily will be the case that such an assemblage" – where "the members have been recruited by counsel" – "will be unable to manage the litigation and control the lawyers" and that the "net result will be that while the 'group' nominally has a large stake in the litigation, the lawyers will dominate decisionmaking").

Two decades ago, Judge Kathleen O'Malley recognized the common sense notion that the "larger the group, the less incentive any single member of the group – and certainly the group as a whole – will have to exercise any supervision or control over the litigation." *Telxon,* 67 F. Supp. 2d at 815. "In the case of a single plaintiff, the agency costs are those costs associated with the monitoring of and communication with the plaintiff's attorney by the individual plaintiff." *Id.* "Where more than one person is involved . . . there is an additional cost associated with intragroup communication and monitoring." *Id.* Thus, the "greater the number of persons comprising the group, the more difficult it is for those persons to communicate with each other, and to speak with a single, coherent voice when making decisions about the conduct of the litigation, or, more precisely, the conduct of the attorney or attorneys in prosecuting the litigation." *Id.* at 816. "With the lead plaintiff group splintered and with no authoritative voice with which to exercise control over counsel, counsel is no more effectively controlled than in the pre-PSLRA era." *Id.* "This is especially so if the group consists of . . . persons who bear no relation and have no connection with one another beyond the fact that they suffered financial loss as a result of a drop in the price of their shares of stock." *Id.*

- 7 -

4912-3233-9308.v2

To avoid such an extra-statutory outcome, courts assess whether "the way in which a group seeking to become lead plaintiff was formed or the manner in which it is constituted would preclude it from fulfilling the tasks assigned to a lead plaintiff." *Cendant*, 264 F.3d at 266. If the court determines that a movant group "had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude, based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner." *Id.* at 267; *Telxon*, 67 F. Supp. 2d at 811-816 (same); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, 2004 WL 3314943, at *5 (N.D. Ohio May 12, 2004) (denying motion by group of previously unaffiliated institutions brought together by counsel as not a "viable lead plaintiff group" under the PSLRA); *In re Century Bus. Servs. Sec. Litig.*, 202 F.R.D. 532, 540 & n.20 (N.D. Ohio 2001) ("A strong line of precedent interprets the Reform Act to preclude unrelated groups of plaintiffs from serving as lead plaintiff.") (citing cases); *Gentiva*, 281 F.R.D. at 120 ("by allowing unrelated groups to aggregate losses in an effort to generate the 'largest financial interest', the possibility emerges that lawyers will form such groups to manipulate the selection process, and in that way gain control of the litigation").[3]

So too here, a counsel-assembled aggregation of seven unaffiliated institutional investors from Florida, Tennessee, and Pennsylvania, represented by four separate law firms, has been

---

[3]    Courts around the country are in accord. *See, e.g.*, *Ind. Pub. Ret. Sys. v. Rivian Auto., Inc.*, 2024 WL 5279156, at *2 (C.D. Cal. Oct. 24, 2024), *recons. denied by* 2025 WL 29449 (C.D. Cal. Jan. 2, 2025); *Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 WL 8804814, at *14 (S.D. Fla. Dec. 6, 2018); *In re Origin Materials, Inc.*, 2023 WL 8698363, at *3 (E.D. Cal. Dec. 15, 2023); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835-36 (N.D. Cal. 2019) (concluding that group should not be permitted to aggregate its losses because "clear consensus" is that group of investors "whose relationship and group status were forged only by a lawyer, is not appropriate to be lead plaintiff based on their aggregated losses"); *Markette v. XOMA Corp.*, 2016 WL 2902286, at *9 (N.D. Cal. May 13, 2016) (same); *Petrobras*, 104 F. Supp. at 622 (same); *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *3 (D. Ariz. Apr. 7, 2008) (same).

4912-3233-9308.v2

presented to the Court as the "Pension Funds."  Evaluated under the relevant factors, the arrangement functions chiefly to aggregate losses and inflate financial interest – that is, to position counsel for lead roles – rather than to promote cohesive, investor-led prosecution.

### 1. The Group Has No Pre-Existing Relationship; Its "Ties" Are Post Hoc

The clearest tell of a lawyer-driven group is simple: its members lack any meaningful pre-existing relationship  and their only "connection" is the lawyers who stand to profit from their forced marriage.  *See, e.g.*, *Ansfield v. Omnicare, Inc.*, 2012 WL 12924531, at *3-*4 (E.D. Ky. Mar. 12, 2012) (rejecting group of two institutional investors where "their only apparent connection is that they were both familiar with a lawyer from the same law firm"); *In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021, at *7 (N.D. Cal. Dec. 16, 2019) (rejecting group of two institutional investors with no pre-existing relationship other than one prior case together).  Here, the Miami-Nashville-Palm Beach-Pittsburgh-Orlando group all but "concedes that its members are unrelated to one another in any way other than the fact that they suffered financial losses by virtue of their purchase of [Neogen] stock." *Telxon*, 67 F. Supp. 2d at 816.

Their Joint Declaration offers only flimsy, post-hoc rationalizations for their alliance, vaguely referencing that "certain of the Funds" are familiar with one another through membership in a national organization (NCPERS)[4] or share "common fiduciary counsel."  ECF 12-4 at Page.ID.107.  Courts routinely reject such tenuous connections as insufficient, and the reliance on shared counsel all but admits the group's lawyer-created nature. *See In re Enron Corp., Sec. Litig.*,

---

[4]   NCPERS "is the largest trade association for public sector pension funds, representing approximately 500 funds throughout the United States and Canada." *See* http://www.ncpers.org/media.  The notion that "certain of the Funds[']" membership in a 500-member organization with thousands of individual participants somehow constitutes a meaningful relationship – particularly when none is expressly stated – is not credible.

- 9 -

206 F.R.D 427, 455, 458 (S.D. Tex. 2002) (noting that group had not "demonstrated why these three states' retirement funds, out of all, have joined to form a group seeking Lead Plaintiff status" and was therefore "artificially created"); *Makhlouf v. Tailored Brands, Inc.*, 2017 WL 1092311, at *6 (S.D. Tex. Mar. 23, 2017) (finding funds' reference to common membership in NCPERS as purported evidence of a pre-existing relationship to be insufficiently meaningful).[5]

Assuming *arguendo* that no pre-existing relationship is required, the group's after-the-fact "ties" still reveal its lawyer-driven origins.

> **2.    Despite Counsels' Attempt to Package Three Distinct Orlando Pension Funds as a Single "Orlando" Fund, the Seven-Member Group Squarely Exceeds *Baan's* 3-5 Member Benchmark**

Since 1999, when the SEC filed an amicus brief in *Baan* (one of the formative contested lead-plaintiff motions after the PSLRA's enactment), courts have recognized that "[c]onstruing the term 'group of persons' in light of the language and purposes of the Act, a court generally should only approve a group that is small enough to be capable of effectively managing the litigation and the lawyers." *Baan*, 186 F.R.D. at 224.  Recognizing the importance of this issue, the SEC further explained that "ordinarily this should be no more than three to five persons, a number that will facilitate joint decisionmaking and also help to assure that each group member has a sufficiently large stake in the litigation." *Id.*  The SEC recommended the straightforward principle that "[e]ach proposed member of the 'group' should be evaluated separately, and the marginal benefit of including another member in the group weighed against the further division of

---

[5]    *See also Petrobras*, 104 F. Supp. 3d at 622 (finding that "there is no obvious affinity between the states of Ohio, Idaho, and Hawaii, and no prior relationship among their state retirement funds beyond common membership in certain professional organizations"); *In re Carreker Corp. Sec. Litig.*, 2003 WL 27396764, at *2 (N.D. Tex. Aug. 14, 2003) (rejecting a group because members "had no relationship prior to this suit," "live in various cities across the United States," "have had a joint telephone conference only once," and their declarations "make non-specific statements").

4912-3233-9308.v2

decisionmaking authority and the attendant problems that enlargement of the group entails." *Id*. The Third Circuit later concurred, holding that "courts should generally presume that groups with more than five members are too large to work effectively." *Cendant*, 264 F.3d at 267. In short, when "a movant group is too large, "the PSLRA's goal of having an engaged lead plaintiff actively supervise the conduct of the litigation and the actions of class counsel will be impossible to achieve, and the court should conclude that such a movant does not satisfy the adequacy requirement." *Id.* With this legal framework in mind, the most telling evidence of the Miami-Nashville-Palm Beach-Pittsburgh-Orlando group's artifice is its counsels' attempt to present three separate legal entities as one: the "Orlando Funds." No such entity exists.

In fact, the three distinct Orlando Funds were created by different state and local laws and are governed by fundamentally different structures. The Police and Firefighters' funds are managed by separate boards of trustees, while the General Employees' fund is governed directly by a separate governing body, the Orlando Mayor, and City Council – a political body with broader, and potentially conflicting, political, and budgetary interests. *See* Fla. Stat. ch. 175; Fla. Stat. ch. 185 (2025).[6]

---

[6] *See* https://www.orlando.gov/Our-Government/Departments-Offices/OBFS/Treasury-Division/Pension-Documents/General-Employees%E2%80%99-Pension-Fund-Board. These separate legal entities have fundamentally distinct governance structures that make it impossible for the three funds to act with a single, coherent voice. The Police and Firefighters' funds are managed by five-member boards with trustees elected by their members, ensuring a singular fiduciary duty to beneficiaries. *See* Fla. Stat. ch. 175; Fla. Stat. ch. 185 (2025). The General Employees' fund, however, is governed directly by the Orlando Mayor and City Council sitting as the Board of Trustees – a political body whose fiduciary duties are necessarily balanced against the City's broader political and budgetary interests. This structural conflict creates an inherent potential for disagreement, particularly in litigation decisions such as evaluating a settlement that might be politically expedient for the City but financially suboptimal for police and fire beneficiaries.

4912-3233-9308.v2

The group's own filings evidence their legal distinctions.  The PSLRA Certification for the non-existent "Orlando Funds" required two different signatures: one for the Police and Firefighters' funds, and another for the General Employees' fund.  This procedural necessity is a *de facto* admission that no single person possesses the authority to bind all three entities.  In *McDermid v. Inovio Pharms., Inc.*, 467 F. Supp. 3d 270 (E.D. Pa. 2020), the court rejected a group that attempted to count a husband and wife as a single member to evade the SEC's 5-person presumptive limit, concluding that "[t]hrough this maneuver, the Inovio Group manage[d] to exclude [the wife] from its headcount while still benefiting from her losses when calculating the Group's financial interest."  *Id.* at 279.  The court found that such maneuvering supported the conclusion "that lawyers manipulated the Inovio Group's composition to evade the presumption 'that groups with more than five members are too large to work effectively.'"  *Id.* (quoting *Cendant*, 264 F.3d at 267).  The Miami-Nashville-Palm Beach-Pittsburgh-Orlando group's attempt to count three distinct funds as one should be rejected for the same reason.

Viewed properly, the Miami-Nashville-Palm Beach-Pittsburgh-Orlando group is a seven-member amalgamation, rendering it presumptively too large to adequately represent the class.

### 3.    The Evidence Reveals a Lawyer-Driven "Marriage of Convenience"

The lawyer-driven nature of the Miami-Nashville-Palm Beach-Pittsburgh-Orlando group is further betrayed by inconsistencies in its own filings.  The Certifications for its members were submitted in two different formats: the Florida-based funds – Miami FIPO, the Orlando funds, and West Palm Beach Firefighters – share one distinct format, while the Certifications for Nashville and Local 66 share a completely different format.  The most plausible explanation for this discrepancy is that the group's two proposed co-lead counsel were initially assembling their own separate slates of clients and subsequently merged their independent efforts at amassing the group

- 12 -

with the largest financial interest.  This conclusion is further bolstered by the fact that one group member, Local 66, filed the initial complaint in its own name.  Courts find such subsequent groupings suspect, noting that the reasons for the combination are "not particularly compelling, especially in light of the fact that [the original filer] previously brought one of the consolidated actions in its own name, adequately and without any assistance." *Gentiva*, 281 F.R.D. at 118.  This cumulative evidence further supports the strong inference that the group is a synthetic creation of counsel.  *See Cendant*, 264 F.3d at 267 (holding that if a court determines a group "had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, it could well conclude . . . that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner" and should be "disqualif[ied]"); *Telxon*, 67 F. Supp. 2d at 816 ("Such an amalgamation is simply inconsistent with the definition of group intended by the PSLRA . . . ."); *Petrobras*, 104 F. Supp. 3d at 622 (finding a pension fund group to be "wholly artificial" because counsel "served as the catalyst for the group's formation").[7]

---

[7]    *See also Makhlouf*, 2017 WL 1092311, at *6 (finding group of pension funds inadequate because "[a]side from their losing investment in TLRD and the same counsel, there is no relationship between the two Funds"); *Int'l Union of Operating Eng'rs Loc. No. 478 Pension Fund v. FXCM Inc.*, 2015 WL 7018024, at *4 (S.D.N.Y. Nov. 12, 2015) (finding group was "lawyer-driven" because joint declaration "acknowledge[d] that only after 'conferring with one another and with counsel' did the two funds decide to jointly file a motion"); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 533-34 (S.D.N.Y. 2015) (finding "no evidence that the members chose counsel, rather than vice versa" because joint declaration acknowledged group was "'introduced to each other through our counsel'") (emphasis omitted); *In re CMED Sec. Litig.*, 2012 WL 1118302, at *5 (S.D.N.Y. Apr. 2, 2012) (finding group was "lawyer-driven" because members acknowledged that "'[i]n consultation with our counsel, we agreed to proceed together'" and "exchanged contact information to be able to communicate outside the presence of counsel" during their group formation call) (emphasis omitted).

4912-3233-9308.v2



4912-3233-9308.v2

██████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████

## III.   CONCLUSION

The Court's choice could not be more divergent.  On one hand is the PSLRA's intended solution – a single, sophisticated institutional investor with the largest individual stake.  And on the other hand, the very problem the statute was enacted to solve – a lawyer-driven amalgamation of unrelated entities.  Appointing the Miami-Nashville-Palm Beach-Pittsburgh-Orlando group's seven-member, four-firm committee would be a step backward, undermining the core principles of the PSLRA and harming the class it purports to represent.  Appointing IAM fulfills the PSLRA's clear mandate to place control of securities litigation in the hands of empowered investors.

 DATED:  September 30, 2025                 Respectfully submitted,

                                                            s/ Jason A. Forge
                                                            JASON A. FORGE

- 15 -

4912-3233-9308.v2

ROBBINS GELLER RUDMAN
  & DOWD LLP
JASON A. FORGE (W.D. Mich. Bar ID
CA181542)
DANIELLE S. MYERS
MICHAEL ALBERT
KENNETH P. DOLITSKY
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
jforge@rgrdlaw.com
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
kdolitsky@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

- 16 -

4912-3233-9308.v2